IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Charlene S.,[1]                                    No. 6:22-cv-00545-HZ

                    Plaintiff,                     OPINION & ORDER

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.

Katherine Eitenmiller
Katie Taylor
Wells, Manning, Eitenmiller & Taylor, P.C.
474 Willamette St
Eugene, OR 97401

        Attorneys for Plaintiff

Kevin Danielson
Civil Division Chief
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Gabriel Bono
Special Assistant United States Attorney
Social Security Administration
6401 Security Blvd
Baltimore, MD 21235

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Charlene S. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB on February 18 or 19, 2019, alleging an onset date of June 12, 2017. Tr. 13, 226.[2] She later amended the date to November 10, 2018. Tr. 13. Plaintiff's date last insured ("DLI") is June 30, 2020. Tr. 16. Her application was denied initially and on reconsideration. Tr. 13. On March 10, 2021, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 13. On April 12, 2021, the ALJ found Plaintiff not disabled. Tr. 27. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on PTSD, anxiety, carpal tunnel, restless leg syndrome, memory loss, hyperparathyroidism, hypercholesterolemia, moderate major depression, and bilateral hearing loss. Tr. 106. At the time of her alleged onset date as amended, she was 51 years old. Tr. 226. She has at least a high school education and past relevant work experience as a certified nursing assistant ("CNA"). Tr. 25-26.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 10-1.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to

the Commissioner. In step five, the Commissioner must establish that the claimant can perform

other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the

Commissioner meets their burden and proves that the claimant can perform other work that

exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566,

416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity after her alleged onset date through her date last insured. Tr. 16. Next, at steps two and

three, the ALJ determined that Plaintiff has the following severe impairments: "carpal tunnel

syndrome, post-traumatic stress disorder, depression, and anxiety." Tr. 16. However, the ALJ

determined that Plaintiff's impairments did not meet or medically equal the severity of a listed

impairment. Tr. 16. At step four, the ALJ concluded that Plaintiff has the residual functional

capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following

limitations:

> The claimant could sit for six hours in an eight-hour workday and stand and/or walk
> in combination for no more than six hours. She could push and pull the same
> amounts as she could lift and carry. She could frequently handle and finger
> bilaterally. Mentally, she could understand, remember, and carry out instructions
> for simple routine tasks with a reasoning level of two or less. She could use
> judgment for and deal with changes in the workplace associated with simple work-
> related decisions. She could occasionally interact with supervisors, coworkers, and
> members of the public. She would be off-task up to, but not including, five percent
> of the workday, which would be scattered throughout the workday.

Tr. 18-19. Because of these limitations, the ALJ concluded that Plaintiff could not perform her

past relevant work. Tr. 25. But at step five, the ALJ found that there are jobs that exist in

significant numbers in the national economy that Plaintiff can perform, such as "Assembler,

electrical accessories," "Bottle line attendant," and "Garment sorter." Tr. 26. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 27.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) rejecting her subjective symptom testimony, (2) rejecting the lay testimony of her spouse, and (3) finding the medical opinion of Valerie Baldwin-Thomas, PMHNP, less than fully persuasive. Pl. Op. Br. 5, ECF 13. The Court concludes that the ALJ did not harmfully err, and affirms the Commissioner's decision.

## I.    Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." Id. (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Holohan v. Massanari, 246 F.3d 1195 (9th Cir. 2001); see also Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff previously worked as a CNA at hospitals and other medical facilities between 2004 and 2013. Tr. 273. She worked as a caregiver at a facility for seniors and individuals with disabilities from 2015 to 2016. Tr. 273. She stated in her function report that she stopped

working because she was tired and had "no energy." Tr. 287. She stated that daily tasks took

three times longer than normal and she needed many breaks. Tr. 287. She also stated that she was

depressed and had "overwhelming anxiety" and PTSD. Tr. 287.

Plaintiff stated that she usually stayed in her pajamas. Tr. 288. She tried to clean her

house, but it took her all day. Tr. 288. She stated that she was not strong enough to do laundry or

change the bedding on her bed. Tr. 288. She was too tired to cook dinner. Tr. 288. She

sometimes cared for her pets by letting them out and giving them food and water, but sometimes

was too tired to lift the water bowls and open the cans of food. Tr. 288.

Plaintiff also stated that she had chronic nightmares and night sweats. Tr. 288. She stated

that because of her depression she did not want to get dressed. Tr. 289. She stated that she had to

bathe right before bed because it was tiring. Tr. 289. She usually did not want to care for her

hair. Tr. 289. She did not need reminders to take care of personal needs and grooming but did

need reminders to take medicine. Tr. 289. She prepared basic meals such as cereal or a sandwich,

but her spouse cooked. Tr. 289. Her appetite was low, and she had lost 80 pounds. Tr. 289.

In terms of chores, Plaintiff stated that she made her bed, did dishes, and swept. Tr. 290.

She stated that she tried every day but sometimes did only one task, and it took her four hours or

more to do chores. Tr. 290. She could not mow or do yard work or lift laundry because she felt

weak. Tr. 290. She walked and rode in a car when she went out, but she did not go out alone

because she would become frightened. Tr. 290. She does not drive because she panics and gets

overwhelmed. Tr. 290. She goes shopping in stores and by mail, but she does not go to stores

alone and tries to finish as quickly as possible. Tr. 290.

Plaintiff reported that she could not pay bills or handle a savings account or checkbook

because she was "overwhelmed with anxiety," so her spouse handled those matters. Tr. 291. She

stated that she used to be able to handle them. Tr. 291. Plaintiff's hobbies included crafting, painting, road trips, camping, and spending time on the coast, but she stated that her depression, anxiety, and PTSD "talks me out of doing what I know I love." Tr. 291. She reported spending no time with people other than family because "I feel like other people suck the life out of me." Tr. 291. The only place she reported regularly going was to a doctor's office. Tr. 291. Her spouse takes time off to take her. Tr. 291.

Plaintiff reported difficulty lifting, talking, hearing, remembering, completing tasks, concentrating, understanding, following instructions, and getting along with others. Tr. 292. She explained that she could not lift over 10 pounds because of her carpal tunnel. Tr. 292. The other limitations were due to her depression, anxiety, and PTSD. Tr. 292. Plaintiff stated that she did not handle stress well and that she took medication, but her issues were still not under control. Tr. 293. She finds changes in routine stressful. Tr. 293. She reported taking Prazosin and Escitalopram and that both caused dizziness and drowsiness. Tr. 293.

At her hearing, Plaintiff testified that she had pain mostly in her hands and wrists. Tr. 42. She also had pain in her back and knees. Tr. 42. The pain got worse after she had bilateral carpal tunnel surgery and removal of a ganglion cyst. Tr. 42. Her hands were stiff, and she had trouble gripping. Tr. 43. The symptoms were "pretty steady most of the time, like a dull pain." Tr. 43. Plaintiff's symptoms worsened if she used her hands. Tr. 43. She treated her hands with home therapy and Aleve. Tr. 43. She had not been told that another surgery was necessary; she had just been told to do the hand exercises at home. Tr. 43. Plaintiff testified that she could lift five to seven pounds without worrying about dropping things. Tr. 45.

Plaintiff testified that she needed to elevate her legs during the day because of her knee pain. Tr. 43-44. She stated that her knees became inflamed if she went up and down the stairs in

her house too often. Tr. 44. She elevated and iced her knees for 10-15 minutes at a time three or four times per day. Tr. 44. She had done so for about four or five years. Tr. 44. She also did physical therapy and was told to wear better shoes. Tr. 44. She did not know yet if she needed knee replacements. Tr. 44. Plaintiff also testified that she needed to lie down during the day to relieve her pain, and for the last year, she usually took a nap that lasted at least an hour. Tr. 45.

In terms of her mental health, Plaintiff testified that she had panic attacks "daily." Tr. 45. They last between a few minutes and several hours. Tr. 45. The long ones occurred approximately once a week. Tr. 45-46. Plaintiff testified that her panic attacks could be random or triggered, and that she did not always know what would trigger them. Tr. 46. She stated, "Going out in public really wipes me out mentally." Tr. 46. She had panic attacks both in public and at home. Tr. 46.

Plaintiff testified that over a year before the hearing date, she started seeing Valerie Baldwin-Thompson, a mental health nurse practitioner who could prescribe medications. Tr. 46. Plaintiff started taking medication after she started seeing Baldwin-Thompson. Tr. 47. Plaintiff also saw a counselor. Tr. 47. She testified that she saw Baldwin-Thompson about every three weeks. Tr. 47. She testified that her symptoms were not resolved since she started taking medication. Tr. 47. She took one medication for depression, another for anxiety, and another for sleep. Tr. 48.

Plaintiff testified that she rarely slept through the night. Tr. 48. She was usually fatigued or tired during the day. Tr. 48. Sometimes she had panic attacks right after waking up. Tr. 48. Her mental health strained her relationship with her family. Tr. 48-49. Plaintiff also had trouble focusing and concentrating. Tr. 49. She stated that she would "get nervous" and her "mind just wanders." Tr. 49.

Plaintiff testified that she stopped working as a CNA because she "started feeling victimized and overwhelmed and started having panic attacks." Tr. 49. She stated that "it makes me almost nauseous" to think about work now. Tr. 49. She tried to work as a caregiver but "got so burned out and overwhelmed" that she could not continue. Tr. 50. Socially, Plaintiff could talk to friends on the phone, but she felt "totally anxiety ridden" if people wanted to come over. Tr. 51. Plaintiff testified that "a couple times a month" she felt like she couldn't get out of bed. Tr. 51. She testified she would miss work because of her panic attacks and depression. Tr. 51.

The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 20. Plaintiff argues that the ALJ erred by (1) rejecting her testimony because the degree of severity was inconsistent with the record, (2) providing vague analysis, and (3) focusing on brief periods of improvement in her mental health symptoms. Pl. Op. Br. 14-16. Plaintiff's argument centers on her mental health conditions, Pl. Op. Br. 16, so the Court focuses on those conditions. Defendant counters that the ALJ properly relied on Plaintiff's activities and treatment history and the objective medical evidence in discounting her testimony. Def. Br. 6, ECF 15. The Court will assess whether substantial evidence supports the ALJ's reasoning, focusing on the grounds Defendant identifies in support of the ALJ's decision.

A. Activities of Daily Living

The ALJ relied on Plaintiff's activities in discounting her testimony. Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for

using daily activities to support an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722-23. In addition, the claimant's ability to perform limited basic daily activities is not a clear and convincing reason to reject a claimant's testimony. *See id.* at 722 ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."); *Webb*, 433 F.3d at 688 ("The mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [her] credibility as to [her] overall disability. One does not need to be utterly incapacitated in order to be disabled.") (internal quotation omitted).

The ALJ noted that Plaintiff engaged in many family activities and trips during the relevant period and also cared for several family members. In December 2018, she reported caring for relatives and also a decrease in the ability to function due to her depression. Tr. 21 (citing Tr. 486-87, 842). In March 2019, Plaintiff reported that she was planning family trips to Louisiana and Utah and a camping trip. Tr. 22 (citing Tr. 503). During this time, she cared for her autistic brother and developmentally delayed half-sister. Tr. 22 (citing Tr. 883). In November 2019, Plaintiff reported having traveled to California for a family event and that she expected family to visit, and that she looked forward to it. Tr. 22 (citing Tr. 1102). In January 2020, Plaintiff reported wanting to return to school to study psychology and human services. Tr. 22 (citing Tr. 1194). In May 2020, Plaintiff reported that she had spent a month in Louisiana caring

for her ill mother-in-law and had driven there and back twice. Tr. 23 (citing Tr. 1229). In June 2020, Plaintiff reported that she felt exhausted and cooped up, but also that she and her daughter were doing crafts and planned to have craft yard sales. Tr. 23 (citing Tr. 1235-36).

Defendant asserts that Plaintiff's travel and care activities contradict her testimony about her frequent panic attacks and wandering mind. Def. Br. 9. Defendant also asserts that Plaintiff's craft sale activity and family visits contradict her reported social anxiety. *Id.* The ALJ viewed Plaintiff's travel and the time she spent caring for relatives as contradicting her testimony about her decreased ability to function. Tr. 17. The ALJ noted, for instance, that although Plaintiff reported a decreased ability to function, she reported around the same time that she had been caring for her mother-in-law in Louisiana for a month and that she had driven from Oregon to Louisiana and back twice. Tr. 17. The ALJ reasonably concluded that Plaintiff's ability to travel across the country and care for a relative undermined her testimony that her ability to go out in public was limited because of daily panic attacks and that she was too overwhelmed to work as a caregiver. Tr. 17. Similarly, the ALJ reasonably concluded that these activities undermined Plaintiff's testimony that she "blanks out" and has a wandering mind, and that her depression sometimes prevented her from getting out of bed. Tr. 17.

The ALJ also concluded that Plaintiff's activity making crafts with her daughter undermined her testimony relating to her ability to concentrate and complete tasks. Tr. 17-18. Therapy notes from June 2020 reflect that Plaintiff had been doing crafts with her daughter as an "outlet for energy." Tr. 1236. Plaintiff wrote in her function report that she did not engage in hobbies due to her mental health symptoms. Tr. 291. The ALJ could reasonably conclude that Plaintiff's ability to concentrate and complete tasks was greater than she alleged.

Defendant also points to Plaintiff's daily chores. Def. Br. 9-10. The ALJ only briefly mentioned Plaintiff's chores. Tr. 19. There is no basis to conclude that the ALJ discounted her testimony based on the chores. The Court can only evaluate the ALJ's reasoning, not reasoning the ALJ could have made. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

In sum, the ALJ did not err in discounting Plaintiff's testimony based on her activities.

B.  Course of Treatment

Defendant asserts that the ALJ properly discounted Plaintiff's testimony because she responded well to treatment and counseling. Def. Br. 9. "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). *See also Perry H. v. Saul*, No. 1:19-CV-00050-AA, 2020 WL 2764614, at *5 (D. Or. May 27, 2020). However, because mental health symptoms may wax and wane over time, the ALJ may not "pick out a few isolated instances of improvement . . . and [] treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017.

Plaintiff correctly argues that her medical records show waxing and waning mental health symptoms. Pl. Op. Br. 15-16. The ALJ's own review of the record establishes this. The ALJ noted that in December 2018, Plaintiff reported an increase in depressive symptoms. Tr. 21 (citing Tr. 842). In January 2019, Plaintiff was off her medication for a week and felt awful, but was better when she went back on it. Tr. 21-22 (citing Tr. 868). Plaintiff changed her medication to Paxil in early 2019 and reported a partial improvement in depression symptoms but no improvement in anxiety. Tr. 22 (citing Tr. 888). Plaintiff's provider deemed the trial of Paxil a failure, which the ALJ did not mention. Tr. 888. In May 2019, Plaintiff reported increasing depression, and her medication was adjusted. Tr. 22 (citing Tr. 1043). The ALJ neglected to

mention that Plaintiff stated that she did not feel any better with the adjustment. Tr. 1043. In

November 2019, Plaintiff reported that her medications were not working, and her anxiety and

depression had not improved. Tr. 22 (citing Tr. 1102). In February 2020, Plaintiff reported

worsening symptoms, and her medication was switched. Tr. 22-23 (citing Tr. 1174). In June

2020, Plaintiff reported increased anxiety, and her counselor noted that Plaintiff fidgeted more

and spoke more quickly. Tr. 23 (citing Tr. 1235-36). In sum, Plaintiff's mental health symptoms

waxed and waned during the relevant period.

The ALJ stated that Plaintiff's increased symptoms "were addressed with changes in

medication or dosage." Tr. 25. The ALJ also noted that Plaintiff described counseling as "very

helpful." Tr. 22, 25. The record during the relevant period reflects that Plaintiff's medication

needed to be frequently adjusted and that it was only partially effective. And while Plaintiff

described counseling as "very helpful," neither her subjective symptom testimony nor the

treatment notes from her providers indicate any period of sustained improvement in Plaintiff's

depression or anxiety. Nor does the ALJ identify any such period. Substantial evidence does not

support the conclusion that Plaintiff's course of treatment controlled her symptoms.

C.  Objective Medical Evidence

The ALJ found that Plaintiff's testimony was inconsistent with the medical record. Tr.

23. An ALJ may discount a claimant's testimony based on a lack of support from objective

medical evidence, but this may not be the sole reason. *See Burch v. Barnhart*, 400 F.3d 676, 680

(9th Cir. 2005) (holding that "an ALJ may not reject a claimant's subjective complaints based

solely on a lack of medical evidence to fully corroborate the alleged severity of pain."); *Taylor v.

Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that a "lack of objective

medical evidence cannot be the sole reason to discredit claimant's testimony," and therefore

holding that the ALJ failed to provide clear and convincing reasons for discounting the claimant's testimony) (citation omitted); *Heltzel v. Comm'r of Soc. Sec. Admin.*, No. 19-1287, 2020 WL 914523, at *4 (D. Ariz. Feb. 26, 2020) (stating that "[b]ecause the ALJ's other reasons for rejecting Plaintiff's testimony were legally insufficient, a mere lack of objective support, without more, is insufficient to reject Plaintiff's testimony."). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022).

In assessing Plaintiff's mental health symptoms, the ALJ stated, "Despite the claimant's frequent reports of increasing depressive symptoms, mental status examinations consistently yielded unremarkable results." Tr. 23. The ALJ relied on evidence in the record that Plaintiff had normal memory and a normal fund of knowledge. Tr. 23 (citing Tr. 842, 860, 905, 1010, 1028, 1032, 1067, 1201, 1244). Plaintiff was cooperative, pleasant, alert, fully oriented, had normal attention and concentration, and had linear and goal-directed thought processes. Tr. 23 (citing Tr. 426, 489, 499, 507, 670, 842, 860, 884, 1010, 1032, 1056, 1067, 1133, 1201). Plaintiff had no suicidal or homicidal ideation. Tr. 23 (citing Tr. 501, 1039, 1063, 1088, 1195, 1237).

Some of these findings are entirely consistent with Plaintiff's testimony. Plaintiff never testified that she had suicidal or homicidal ideation.

In evaluating Plaintiff's ability to interact with others, the ALJ focused on Plaintiff's testimony about panic attacks in public. Tr. 17. Plaintiff's ability to be cooperative and pleasant in meeting with her providers does not undermine her testimony that she sometimes had panic attacks in public. Tr. 17. Indeed, when Plaintiff did a sleep study shortly before her alleged onset date, her providers recorded that she could not finish the study because she had a panic attack,

stating that Plaintiff "seemed visibly panicked." Tr. 443. In late 2019, Plaintiff reported to her therapist that she had a panic attack. Tr. 1102. The objective medical record supports Plaintiff's testimony that she had panic attacks, and it neither supports nor contradicts her testimony about the frequency of her panic attacks. The ALJ also found that Plaintiff's cooperative and pleasant demeanor undermined her testimony about increasing depressive symptoms. Tr. 17. Plaintiff's ability to be cooperative and pleasant in meeting with providers does not undermine her testimony that her symptoms of depression had worsened. The objective medical record neither supports nor contradicts her testimony about depression. However, because the ALJ reasonably relied on Plaintiff's activities in discounting her testimony about the limitations associated with her panic attacks and depression, the ALJ's reasoning is still supported by substantial evidence. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (substantial evidence supported ALJ's discounting of plaintiff's testimony where ALJ properly relied on activities but erred in relying on receipt of unemployment benefits and conservative treatment).

Plaintiff also reported memory issues, and the ALJ correctly noted that the objective medical findings of a normal memory and fund of knowledge contradict that testimony. Tr. 17. Similarly, Plaintiff reported trouble concentrating, and the ALJ reasonably found that the findings of normal attention and concentration and linear and goal-directed thought processes contradict that testimony. Tr. 17-18.

D.  Severity of Symptoms

Plaintiff argues that the ALJ improperly discounted her testimony because the degree of severity she alleged was inconsistent with the record. Pl. Op. Br. 14. The ALJ stated:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the degree of severity alleged is inconsistent with the evidence of record. The record documents the claimant's physical and mental symptoms and relevant treatment. However,

objective examination findings have generally been unremarkable. The claimant reported that counseling has been very effective.

Tr. 23.

For symptoms such as pain and fatigue, which are difficult to quantify, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). This is because the degree of pain or fatigue "caused by a given physical impairment can vary greatly from individual to individual." *Id.* (internal quotations omitted).

The ALJ relied on objective examination findings and the efficacy of counseling in concluding that the record did not support the degree of symptoms alleged. Tr. 23. The objective findings on Plaintiff's mental status contradict her testimony about her memory and concentration, but not her panic attacks. However, the ALJ reasonably found that Plaintiff's activities undermined her testimony about her panic attacks and her overall ability to function with anxiety and depression.

In light of the foregoing, Plaintiff's argument that the ALJ's decision is too vague, Pl. Op. Br. 14-15, lacks merit. While the ALJ must do more than merely summarize the evidence and provide a conclusion, the ALJ need not write a lengthy "dissertation[]." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The ALJ did explain why he found Plaintiff's symptom testimony to be inconsistent with other evidence in the record. The ALJ made some errors in his evaluation of Plaintiff's symptom testimony; however, substantial evidence still supports his conclusions. *Carmickle*, 533 F.3d at 1163.

17 – OPINION & ORDER

II.    **Lay Witness Testimony**

Plaintiff argues that the ALJ erred in rejecting the testimony of her spouse. Pl. Op. Br.

16-18. "Lay testimony as to a claimant's symptoms is competent evidence that the Secretary

must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation

omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and

persistence of your symptoms, we consider all of the available evidence from your medical

sources and nonmedical sources about how your symptoms affect you."). Under the 2017

regulations, the ALJ is not "required to articulate how [they] considered evidence from

nonmedical sources" using the same criteria required for the evaluation of medical sources. 20

C.F.R. §§ 404.1520c(d), 416.920c(d). Under the new regulations, however, the ALJ must still

articulate their assessment of lay witness statements. *Tanya L.L. v. Comm'r Soc. Sec.*, 526 F.

Supp. 3d 858, 869 (D. Or. 2021).

The ALJ must give reasons "germane to the witness" when discounting the testimony of

lay witnesses*. Valentine*, 574 F.3d at 694. But the ALJ is not required "to discuss every witness's

testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded

on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for

rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting

similar testimony by a different witness. *Id.* Additionally, "[w]here lay witness testimony does

not describe any limitations not already described by the claimant, and the ALJ's well-supported

reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony,"

any error by the ALJ in failing to discuss the lay testimony is harmless. *Id.* at 1117, 1122.

Plaintiff's spouse completed a third party function report in May 2019. Tr. 295-302. He

reported that Plaintiff was not as active as she used to be. Tr. 295. Plaintiff took a long time to do

things such as shower and dress. Tr. 295. Plaintiff's spouse wrote that Plaintiff was overwhelmed by her anxiety, depression, and PTSD. Tr. 295. Plaintiff had no energy to do laundry. Tr. 296. She could sometimes care for pets but sometimes did not have the energy. Tr. 296. She had bad dreams and chronic night sweats and restless legs when sleeping. Tr. 296. She did not always bathe or care for her hair. Tr. 296. Her spouse reminded her to take her medication before bed. Tr. 297. Plaintiff only did basic meal preparation such as making a sandwich, and she had no appetite. Tr. 297. If she swept the house, it took all day. Tr. 297. She got "wiped out" after ten minutes of doing chores. Tr. 297. She struggled to lift a laundry basket or mow the grass. Tr. 297. She could not go out alone because she had panic attacks. Tr. 298. She did not drive because she had trouble focusing. Tr. 298. She went shopping about once a month but had to leave before she got a panic attack. Tr. 298. She was overwhelmed by handling bills and finances, so her spouse did it. Tr. 298.

Plaintiff's spouse reported that Plaintiff used to go camping and on trips to the coast and do crafting, but she no longer does these activities because of her illness. Tr. 299. She did not socialize with anyone outside the family. Tr. 299. The only place she went regularly was to medical appointments. Tr. 299. Her spouse accompanied her to appointments, and she needed reminders. Tr. 299. Plaintiff became overwhelmed when she was around a lot of people. Tr. 299. Plaintiff's spouse reported that Plaintiff struggled with lifting, talking, hearing, remembering, completing tasks, concentrating, understanding, following instructions, using her hands, and getting along with others. Tr. 300. Plaintiff's spouse reported that Plaintiff could walk "200 ft not sure" without needing to rest. Tr. 300. She could pay attention for 10 minutes and could not finish what she started. Tr. 300. Her ability to follow written and spoken instructions had worsened. Tr. 300. She did not handle stress well. Tr. 301. Plaintiff's spouse reported that

Plaintiff's health had been declining since 2012 and that she was tired all the time and could not lift over 5 lbs. Tr. 302.

The ALJ found Plaintiff's spouse's report "partially consistent with the evidence." Tr. 20. His conclusion was based on "the objective medical evidence, medical opinions, and other factors evaluated, such as daily activities and treatment history[.]" Tr. 20. Plaintiff argues that the ALJ erred by failing to explain which portions of the testimony were consistent with the record or why other portions of it were inconsistent. Pl. Op. Br. 17.

The ALJ's analysis of Plaintiff's spouse's statement shows that he intended to rely on the same bases on which he relied in discounting Plaintiff's testimony. Plaintiff's spouse's statement is consistent with Plaintiff's testimony about her mental health conditions and ability to function. The same substantial evidence supporting the ALJ's discounting of Plaintiff's testimony also supports the ALJ's discounting of Plaintiff's spouse's testimony. Any error by the ALJ in addressing the spouse's statement was harmless.

## III.    Medical Opinion Evidence

Plaintiff argues that the ALJ erred in discrediting the medical opinion of Valerie Baldwin-Thomas, PMHNP ("NP Baldwin-Thomas"). Pl. Op. Br. 5-11. New regulations about weighing medical opinion evidence apply to claims filed on or after March 27, 2017. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Under the new regulations, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. *Id.* Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the

evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2). The supportability factor considers the degree of relevant "objective medical

evidence and supporting explanations" relied on by a medical source to support their opinion. 20

C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor analyzes how consistent the

medical opinion is with other medical and non-medical evidence in the record. 20 C.F.R. §§

404.1520c(c)(2), 416.920c(c)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the

medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2).

In doing so, the ALJ is required to explain how supportability and consistency were considered

and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2),

416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the

same issue are both equally well-supported . . . and consistent with the record . . . but are not

exactly the same," the ALJ is required to explain how the other factors were considered. 20

C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot

reject an examining or treating doctor's opinion as unsupported or inconsistent without providing

an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th

Cir. 2022).

NP Baldwin-Thomas performed a medical evaluation of Plaintiff's capacity in February

2021. Tr. 1392-1399. At that time, she had been seeing Plaintiff for one year, providing

treatment and medications for Plaintiff's mental health conditions. Tr. 1392. She saw Plaintiff

every three to four weeks. Tr. 1392. NP Baldwin-Thomas wrote that Plaintiff suffered from

anxiety, depression, insomnia and hypersomnia, difficulty eating, irritability, panic,

hyperarousal, dissociation, hypervigilance, flashbacks, and nightmares. Tr. 1393. She wrote that

because of these limitations, Plaintiff "is not able to leave her home & be in public w/o experiencing extreme anxiety. This impacts at home as well when family or others visiting." Tr. 1393. NP Baldwin-Thomas opined that Plaintiff's daily panic interfered with her ability to work. Tr. 1393.

NP Baldwin-Thomas stated that Plaintiff's ability to understand, remember, and carry out instructions was affected by her impairments. Tr. 1395. She assessed mild limitations in Plaintiff's ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions. Tr. 1396. She assessed moderate limitations in Plaintiff's ability to understand and remember complex instructions and carry out complex instructions. Tr. 1396. She assessed marked limitations in Plaintiff's ability to make judgments on complex work-related decisions. Tr. 1396. The assessment was based on a structured clinical interview and symptom-based assessment at psychiatric evaluations. Tr. 1396.

NP Baldwin-Thomas also stated that Plaintiff's ability to interact appropriately with supervisors, coworkers, and the public, and to respond to changes in routine, was affected by her impairments. Tr. 1396. She assessed mild limitations in Plaintiff's ability to interact appropriately with the public and coworkers, no limitation in Plaintiff's ability to interact appropriately with supervisors, and moderate limitation in Plaintiff's ability to respond to changes in routine. Tr. 1396. She also stated that Plaintiff could not interact with the public or others due to severe anxiety. Tr. 1397. She relied on symptoms Plaintiff endorsed in a structured clinical interview. Tr. 1397.

NP Baldwin-Thomas opined that Plaintiff could manage benefits in her own best interest. Tr. 1398. She stated that Plaintiff could not concentrate for more than 20 minutes due to her anxiety. Tr. 1398. She stated that Plaintiff would be off task for 15% or more during a workday

because of her anxiety, and would miss more than four days of work per month because of her anxiety and depression. Tr. 1398-99.

The ALJ found NP Baldwin-Thomas's opinion "persuasive with respect to the assigned moderate to marked functional limitations." Tr. 25. He found the marked and moderate limitations consistent with Plaintiff's clinical presentation. Tr. 25. He concluded that NP Baldwin-Thomas's off-task and attendance-related limitations were inconsistent with Plaintiff's "consistently unremarkable objective exam findings." Tr. 25. The ALJ stated that changes in medication or dosage addressed Plaintiff's increased symptoms of depression and noted that Plaintiff described counseling as "very helpful." Tr. 25. He also stated that NP Baldwin-Thomas "failed to cite to specific evidence." Tr. 25.

Plaintiff first argues that the ALJ erred in discounting NP Baldwin-Thomas's opinion based on objective findings in the record. Pl. Op. Br. 7. Plaintiff asserts that NP Baldwin-Thomas based her opinion on a structured clinical interview, which is itself an objective measure. *Id.* Defendant counters that the ALJ reasonably discounted the opinion as based mostly on Plaintiff's subjective complaints. Def. Br. 4-5.

The Ninth Circuit has held that clinical interviews and mental status evaluations performed by psychiatrists are objective measures that "cannot be discounted as a 'self-report.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). A psychiatrist's partial reliance on self-reported symptoms in performing such evaluations is not a basis to reject the opinion. *Id.* Accordingly, the ALJ could not discount NP Baldwin-Thomas's opinion because it relied on self-reports. The ALJ could, however, discount NP Baldwin-Thomas's opinion because it was not consistent with other medical evidence in the record. The ALJ did the latter, concluding that NP Baldwin-Thomas's opinion was partially inconsistent with unremarkable objective exam

findings. Tr. 25. Even if the ALJ erroneously treated NP Baldwin-Thomas's opinion as based on subjective sources, the error was harmless because he properly considered whether the opinion was consistent with other evidence in the record. The ALJ could reasonably conclude that the largely normal results of Plaintiff's mental status exams undermined the opinion that Plaintiff would be off task more than 15% of a typical workday and would miss more than four days of work per month.

Next, Plaintiff argues that the ALJ erred in discounting NP Baldwin-Thomas's opinion because "she failed to cite to specific evidence." Pl. Op. Br. 7 (citing Tr. 25). In support of her assessments on Plaintiff's off task and attendance limitations, NP Baldwin-Thomas checked boxes in the form and wrote that Plaintiff's anxiety would cause her to be off task, and her anxiety and depression would cause her to miss more than four days per month. Tr. 1298-99. Checkbox forms may merit weight where they are supported by treatment records. *See Garrison, 759 F.3d at 1014 n.17.* Plaintiff asserts that NP Baldwin-Thomas's opinion is consistent with the treatment notes. Pl. Op. Br. 7-8.

Plaintiff established care with NP Baldwin-Thomas in February 2020. Tr. 1174. At that appointment, Plaintiff reported that she was "anxious a lot" and "the depression is a lot worse." Tr. 1174. She presented in "mild anxious distress." Tr. 1176. Plaintiff did not feel that Paxil was helping. Tr. 1174. She stated that Prazosin was "not working at all." Tr. 1174. She reported that she slept poorly and felt exhausted upon waking up. Tr. 1174. NP Baldwin-Thomas switched Plaintiff to Lexapro. Tr. 1174. In March 2020, NP Baldwin-Thomas noted that Plaintiff was "[t]olerating switch" in medication and "[r]eports improved sleep but ongoing morning anxiety." Tr. 1199. Plaintiff had ongoing PTSD symptoms. Tr. 1200. She again presented in "mild anxious distress." Tr. 1201. She was instructed to increase her dose of Lexapro. Tr. 1202.

In early June 2020, her next appointment, Plaintiff presented in "moderate anxious distress." Tr. 1243. Her affect was "intense and anxious." Tr. 1244. She reported daily nervousness and anxiety and a depressed mood. Tr. 1241. Her sleep was not restful. Tr. 1241. NP Baldwin-Thomas added a prescription for buspirone and a brief course of clonazepam for severe anxiety. Tr. 1242. Plaintiff also reported that she had spent time taking care of her mother-in-law in Louisiana. Tr. 1241. In mid-June 2020, Plaintiff reported that the buspirone was helping, and NP Baldwin-Thomas increased the dosage. Tr. 1252. Plaintiff's sleep still was not restful. Tr. 1252. Her mood showed mild to moderate depression, and her affect was mildly anxious but with a good response to humor. Tr. 1254. She perseverated and was ruminative. Tr. 1254.

The ALJ reasonably found that NP Baldwin-Thomas's assessed moderate and marked limitations were consistent with the record. Tr. 25. The treatment notes do not clearly support NP Baldwin-Thomas's conclusions that Plaintiff would be off-task more than 15% of the time on a typical workday and would miss more than four days of work per month. NP Baldwin-Thomas's opinion provides no summary or findings from the clinical interview, so it is impossible say whether the clinical interview supports those limitations. And because the other assessed limitations are mostly mild to moderate, it does not necessarily follow that Plaintiff would fall into the most severe categories available for being off task or missing days of work. It was not unreasonable for the ALJ to accept only the moderate and marked limitations and reject the off-task and absenteeism assessments.

Plaintiff compares NP Baldwin-Thomas's treatment notes with the notes of other providers. Pl. Op. Br. 8-10. However, even if the treatment notes are consistent, it is not apparent that they support the off-task and absenteeism restrictions NP Baldwin-Thomas marked. This is

particularly true given that Plaintiff reported to her providers that she went on frequent family trips and cared for disabled and ailing relatives during the relevant period.

Defendant asserts that the ALJ also reasonably relied on improvements through medication and counseling in discounting NP Baldwin-Thomas's opinion. Def. Br. 5. As discussed above, substantial evidence does not support the conclusion that Plaintiff's course of treatment was fully effective. But based on the largely normal objective findings, lack of support in the record, and the mostly mild to moderate limitations NP Baldwin-Thomas assessed, the ALJ reasonably discounted NP Baldwin-Thomas's assessment of Plaintiff's off task and attendance limitations.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED:_____April 18, 2023_____.


_____
MARCO A. HERNÁNDEZ
United States District Judge